# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:20-CV-00010-HBB

MARTIN J. WALSH,[1] SECRETARY
DEPARTMENT OF LABOR et al                                    PLAINTIFF

VS.

CHEVRON MINING, INC.                                          DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

### I.  BACKGROUND

This matter is before the Court on Plaintiff Martin J. Walsh's and Defendant Chevron Mining, Inc.'s dueling motions for summary judgment (DN 16, 17).  Defendant has responded to Plaintiff's motion (DN 21), and Plaintiff has responded to Defendant's motion (DN 20).  Both parties have filed replies in support of their respective motions (DN 22, 23).  The matter is ripe for adjudication.  For the reasons below, Plaintiff's motion for summary judgment (DN 16) is **DENIED**, and Defendant's motion for summary judgment (DN 17) is **GRANTED**.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11).

---

1  When this matter commenced, Eugene Scalia was the Secretary for the Department of Labor (DN 1).  On January 20, 2021, Milton Al Stewart became Acting Secretary of Labor (*see* DN 16 PageID 42 n.1).  However, on March 23, 2021, Martin J. Walsh was sworn in as the 29th Secretary of Labor.  *Secretary of Labor Martin J. Walsh*, DEP'T OF LABOR, https://www.dol.gov/agencies/osec.  Pursuant to FED. R. CIV. P. 25(d), Martin J. Walsh has been substituted as Plaintiff in this case.

## II.  JURISDICTION

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1345, 30 U.S.C. § 934(b)(4)(B), and 33 U.S.C. § 921(d) which was incorporated into the Black Lung Benefits Act ("BLBA") by 30 U.S.C. § 932(a).  Further, this Court is the proper venue pursuant to 28 U.S.C. §§ 97(b) and 1391(b), 30 U.S.C. § 934(b)(4)(B) and 33 U.S.C. § 921(d) which was incorporated into the BLBA by 30 U.S.C. § 932(a).

## III. SUMMARY OF THE FACTS[2]

This case is a civil action in which Plaintiff is seeking reimbursement to the Black Lung Disability Trust Fund ("Trust Fund") from Defendant (DN 1, ¶ 1).  In addition to reimbursement, Plaintiff is also seeking "enforcement of an administrative law judge's final decision and order against Chevron Mining, awarding benefits to its former employee, James R. Alsbrooks (deceased), pursuant to the BLBA (Id.).

Defendant is the successor to Pittsburg & Midway Coal Company,[3] which operated a coal mine in Hopkins County, Kentucky (Id. at ¶ 4).  *See* 30 U.S.C. § 802(h)(2) (defining "coal mine"); 20 C.F.R. § 725.101(a)(12) (same).  During its operation and the relevant time periods in this matter, Pittsburg & Midway and Defendant were classified as "operators" within the definitions of the BLBA (Id.).  30 U.S.C. § 802(d) ("'operator' means any owner, lessee, or other person who

---

2    The facts contained in this section only describe the undisputed facts, which were alleged in Plaintiff's complaint and admitted in Defendant's answer (DN 1; DN 6 ¶ 1) or where facts were both included in Plaintiff's and Defendant's motions for summary judgment (DN 16; DN 17-1).

3    It is uncertain when Defendant ultimately became the successor to Pittsburg & Midway Coal Company, as Defendant has denied the paragraph in the complaint pertaining to a merger (DN 1 ¶ 22; DN 6 ¶ 2).  However, Defendant admits to being the successor to Pittsburg & Midway (*compare* DN 1 ¶ 17 *with* DN 6 ¶ 1). Defendant's memorandum in support of its motion for summary judgment also uses Defendant interchangeably with Pittsburg & Midway when discussing the previously-admitted request for a hearing in front of an administrative law judge (DN 17-1 PageID 138; *see also* DN 1 ¶ 20; DN 6 ¶ 1).

operates, controls, or supervises a coal . . . mine"); 20 C.F.R. § 725.101(a)(23). The BLBA required Pittsburg & Midway to either secure insurance for benefits payments or qualify as a self-insurer (DN 1 ¶ 15). 30 U.S.C. § 933(a); *see also* (DN 17-2 PageID 170-75). Pittsburg & Midway opted for the latter and self-insured (DN 1 ¶ 16; DN 17-2 PageID 170-75).

Mr. Alsbrooks was employed by Pittsburg & Midway as a coal miner (DN 1 ¶ 14). On May 3, 2004, Mr. Alsbrooks filed a claim for BLBA benefits (Id. at ¶ 18). Several months later, on February 3, 2005, the District Director[4] issued a determination that Mr. Alsbrooks was entitled to monthly disability benefits as a result of pneumoconiosis[5] and found that Pittsburg & Midway was liable for such payments (Id. at ¶ 19; *see also* DN 17-2 PageID 164-75). Pittsburg & Midway requested a hearing before an administrative law judge and, in the interim, declined to pay benefits (DN 1 ¶ 20). Administrative Law Judge Daniel Solomon ("ALJ") issued his Decision and Order awarding benefits on July 16, 2009, and that Decision was subsequently appealed to the Benefits Review Board (DN 1 ¶¶ 23, 25; DN 17-1 PageID 138-39; DN 17-2 PageID 183-94). After two remands, the Benefits Review Board ultimately affirmed the ALJ's third Decision and Order (DN 1 ¶¶ 23, 25; DN 17-2 PageID 198-223). No further review was sought. Defendant began making monthly benefits payments to Mr. Alsbrooks, beginning in July 2009, and continued until Mr. Alsbrooks' death in June 2014 (DN 1 ¶ 24).

---

4    The District Director is a position within the U.S. Department of Labor's Office of Workers' Compensation Programs, Division of Coal Mine Workers' Compensation (DN 16 PageID 43 n.2; DN 17-1 PageID 137). The District Director is "authorized to develop and adjudicate claims" under the BLBA. 20 C.F.R. § 725.101(a)(16); *see also* 20 C.F.R. §§ 725.350(b), 725.401.

5    "Pneumoconiosis, commonly called black lung disease, is a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." Zurich Am. Ins. Grp. v. Duncan, 889 F.3d 293, 296 (6th Cir. 2018) (quoting 30 U.S.C. § 902(b)) (internal quotations omitted); *see also* 20 C.F.R. § 718.201(a).

During and after these payments, Defendant also reimbursed the Trust Fund "for all principal amounts paid in interim months benefits and for diagnostic and medical treatment expenses" (Id. ¶ 26). Additionally, Defendant issued payments to Mr. Alsbrooks for all the past-due benefits from May 2004 through January 2005 (Id. at ¶ 27). After these payments, on June 17, 2014, the District Director contacted Defendant requesting reimbursement of the interest accrued on the principal amounts previously described (Id. at ¶ 31). Defendant has disputed the District Director's assessment of interest[6] and, as a result, has refused to pay the alleged interest amounts (Id. at ¶ 36). This dispute regarding interest has led to the present matter.

Plaintiff filed the complaint on January 17, 2020 (DN 1), and Defendant answered on March 18, 2020 (DN 6). As noted at the forefront, the parties have consented to the undersigned conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment (DN 11). On March 15, 2021, both parties filed cross-motions for summary judgment, both parties responded to the opposing motion, and both parties replied in support of their respective motions (DN 16, 17, 20, 21, 22, 23).

---

6    In the complaint, Plaintiff has detailed how the District Director determined the interest (DN 1 ¶ 33), and Defendant has admitted this paragraph of the complaint (DN 6 ¶ 1). The assessment is as follows:

> Regarding the interest owed the Trust Fund on the [principal amount that Defendant has imbursed], the District Director assessed interest beginning: (i) with respect to monthly interim benefits payments, from the date the Fund made each monthly benefit payment from March 2005 through June 2009, (ii) with respect to diagnostic costs, from the later of the date the Fund incurred each expense or March 2005, and (iii) with respect to medical treatment costs, from the date the Fund incurred each expense.

(DN 1 ¶ 33).

## IV. STATUTORY, REGULATORY, AND PROCEDURAL BACKGROUND

### A. BLBA and the Trust Fund

The BLBA, 30 U.S.C. § 901 *et seq*, provides a mechanism for "coal miners . . . who are totally disabled due to pneumoconiosis arising out of employment in one or more of the Nation's coal mines" to receive benefits payments. Id. § 901(a). To receive the payments under the BLBA, the applicant "must show that (1) he or she is a miner (2) who suffers from pneumoconiosis (3) arising out of coal mine employment, which (4) contributes to (5) his or her total disability." Zurich Am. Ins. Grp. v. Duncan, 889 F.3d 293, 296 (6th Cir. 2018). This initial determination of eligibility is processed and decided by the District Director. 20 C.F.R. § 725.401. Next, a formal hearing before an administrative law judge may be requested. Id. § 725.421. After, the administrative law judge issues their decision, a party may appeal to the Benefits Review Board. Id. § 725.481. While not exercised in the present case, it is possible for an aggrieved party to have the court of appeals for the circuit, the Sixth Circuit in this case, review the Benefits Review Board's determination and request the Board's order be modified or set aside. Id. § 725.482.

If the applicant is eligible for payments, these payments may be made to (1) the "miner who meets the conditions" set forth above; (2) the "surviving spouse . . . of a deceased miner who meets the conditions[;]" (3) "the child of a deceased miner who meets the conditions" if the miner is deceased and there is no surviving spouse; (4) the "surviving dependent parents, where there is no surviving spouse or child, or the surviving dependent brothers or sisters, where there is no surviving spouse, child, or parent, of a miner, who meets the conditions[;]" or (5) the "child of a miner's surviving spouse who was receiving benefits under [number 3] at the time of such spouse's death." 20 C.F.R. § 725.201(a); *see* Shepherd v. Incoal, Inc., 915 F.3d 392, 399 (6th Cir. 2019).

After establishing eligibility for the benefits payments, the determination then turns to who shall pay these benefits. In order to secure payment of these benefits, operators of coal mines must either qualify as a self-insurer or obtain insurance for the payment of the benefits. 30 U.S.C. § 933(a); 20 C.F.R. § 725.494(e). The miner's "most recent employer that meets [the conditions of employing the miner for at least one year and being capable of paying benefits under the BLBA] is deemed the 'responsible operator' and is forced to foot the bill."[7] Karst Robbins Coal Co. v. Dir., OWCP, 969 F.3d 316, 320 (6th Cir. 2020) (citing 20 C.F.R. § 495(a)(1)).

If an operator fails to, or refuses to, commence payments of the benefits within thirty days after the "date of an initial determination of eligibility[,]" then the BLBA allows for the Trust Fund to begin paying those benefits. 26 U.S.C. § 9501(d)(1); *see also* 20 C.F.R. §§ 725.420(c), 725.522(a). The Trust Fund will also pay for the costs of any travel or examinations necessary to determine whether the miner is eligible for the benefits payments. 20 C.F.R. § 725.406(e).

However, the BLBA dictates that when an eligible miner, or an applicable recipient under 20 C.F.R. § 725.201(a), receives payments dispensed from the Trust Fund, and the Secretary of Labor determines that the operator is liable for those payments and expenses, then the operator "is liable to the United States for repayment to the fund of the amount of such benefits the payment of which is properly attributed to him plus interest thereon." 30 U.S.C. § 934(b)(1); *see also* 20 C.F.R. §§ 725.420, 725.602(a) ("In any case in which the fund has paid benefits, including medical

---

7 An "operator" is "[a]ny owner, lessee, or other person who operates, controls, or supervises a coal mine[.]" 20 C.F.R. § 725.491(a)(1). Additionally, "[f]or the purposes of determining whether a person is or was an operator that may be found liable for the payment of benefits under this part, there shall be a rebuttable presumption that during the course of an individual's employment with such employer, such individual was regularly and continuously exposed to coal mine dust during the course of employment. The presumption may be rebutted by a showing that the employee was not exposed to coal mine dust for significant periods during such employment." Id. § 725.491(d).

benefits, on behalf of an operator . . . which is determined liable therefore, or liable for a part thereof, such operator . . . shall simultaneously with the first payment of benefits made to the beneficiary, reimburse the fund (with interest) for the full amount of all benefit payments made by the fund with respect to the claim."). The interest rate of these amounts would be established by the Internal Revenue Code of 1954. Id. § 934(b)(5)(B); *see also* 26 U.S.C. § 6621; 20 C.F.R. § 725.608(d)(3).

This calculation of interest, or more specifically the determination of when interest begins, is the focal point of the conflict in this matter.

### B. Parties' Motions for Summary Judgment

#### 1. Plaintiff's Motion for Summary Judgment

Plaintiff claims that Defendant owes the Trust Fund $12,734.83 in interest, as a result of Defendant's (or their predecessor-in-interest's) refusal to pay the principal amounts issued by the Trust Fund until after the Benefits Review Board's final determination (DN 16 PageID 50-53). The amount was originally supposed to be $14,583.83, but Defendant overpaid the Trust Fund by $1,849 when reimbursing the principal amounts (Id. at PageID 53). Plaintiff claims that the Trust Fund began making payments to Mr. Alsbrooks in March 2005, which was thirty days after the initial determination of Mr. Alsbrooks' eligibility to receive the benefits payments, and Plaintiff argues that this payment and interest after thirty days comports with 30 U.S.C. § 932(d) (Id. at PageID 51-52).

As a result, the Department of Labor's Office of Workers' Compensation Programs began calculating Defendant's "interest obligation on monthly benefits, medical treatment benefits, and diagnostic expenses beginning with the later of March 2005 or the date the particular benefit was

paid or expense incurred, and ending with [Defendant]'s December 2013 reimbursement of principal" (Id. at PageID 51). The calculation of interest from that point in time, Plaintiff asserts, is supported by the C.F.R. and precedent (Id. at PageID 51-52) (citing 20 C.F.R. § 725.608(a) & (b); 30 U.S.C. § 932(d); Youghiogheny & Ohio Coal Co. v. Warren, 841 F.2d 134 (6th Cir. 1987)). Further, Plaintiff cites to its previous request for admissions in which Defendant "admitted that if interest began accruing with the later of March 2005 or the date the particular benefits was paid or expense incurred, then it owes the amount of interest reflected in the District Director's June 2014 request for payment of interest" (Id. at PageID 52-53) (citing DN 16-2 PageID 125).

Additionally, Plaintiff argues that Defendant should pay Mr. Alsbrooks' widow, Alana Alsbrooks, $3,022.02 in interest accrued on past-due benefits (Id. at PageID 53). Plaintiff contends that since Defendant "was responsible for paying past-due benefits for the period [of] May 2004 through January 2005," which Defendant paid, then Defendant would also be responsible for interest accrued during that same period (Id. at PageID 53-54). Plaintiff notes that the initial interest cost should have been $3,282.14, but Defendant made a partial payment of $260.12, which reduced the amount allegedly owed to $3,022.02 (Id. at PageID 54).

In response, Defendant asserts "there is no factual dispute as to whether [Defendant] paid all benefits 'within the time required' under 30 U.S.C. [§] 932(d)[,]" and instead, "[t]he dispute . . . is [regarding] whether any interest due from [Defendant] accrued on those payment of benefits that were later reimbursed by [Defendant] and if so, when interest begins to accrue" (DN 21 PageID 419). Defendant argues that "[i]nterest does not begin to accrue on benefits that are paid 'within the time required' or before the expiration of when they become 'due'" (Id. at PageID 420). It is Defendant's contention that the District Director's determination did not become effective to

compel payment because a hearing before an administrative law judge was requested within thirty days (Id.) (citing 20 C.F.R. §§ 725.418(a), 725.419(a), 725.502(a)(2)).   Next, Defendant discusses each of the cases and regulations cited by Plaintiff to reiterate that interest had not accrued because the payments not becoming "due" (Id. at PageID 422-26).   Defendant emphasizes the prefatory phrase in 20 C.F.R. § 725.608(a)(1), which states in part:

> In any case in which an operator fails to pay benefits that are ***due*** (§ 725.502), <u>the beneficiary shall also be entitled</u> to simple annual interest, computed from the date on which the benefits were due.

(Id. at PageID 423) (citing 20 C.F.R. § 725.608(a)(1)) (emphasis in original).

Further, Defendant quotes the next subsection and claims it supports this assertion:

> If an operator or other employer fails or refuses to pay any or all benefits ***due*** pursuant to an award of benefits or an initial determination of eligibility made by the district director and the fund undertakes such payments, <u>such operator or other employer shall be liable to the fund </u> for simple annual interest on all payments made by the fund . . . .

(Id. at PageID 424) (citing 20 C.F.R. § 725.608(b)) (emphasis in original).   Defendant also notes that the phrase "that are due" was omitted from § 725.608(a)(2), (3), and (4), which would illustrate an intent for the interest to begin accruing when the benefits become "due" (Id.).   *Compare* 20 C.F.R. § 725.608(a)(1) *with* § 725.608(a)(2)-(4).

Based on the language of 20 C.F.R. § 725.502(b)(2), Defendant asserts that the benefits become due thirty days after two conditions are satisfied: "(1) an effective compensation order has been issued; and (2) the District Director computes the amount of benefits payable and provides notice to the parties."   Thacker v. Old Republic Ins. Co., 416 F.Supp.3d 651, 657 (E.D. Ky. 2019) (citing 20 C.F.R. § 725.502); (DN 21 PageID 425, 432); *see also* 20 C.F.R. § 725.419(d); 20 C.F.R.

§ 725.502(b)(2) ("Within 30 days after the issuance of an effective order requiring the payment of benefits, the district director shall compute the amount of benefits payable for periods prior to the effective date of the order, in addition to any interest payable for such periods (see § 725.608), and shall so notify the parties.").   Once a party seeks a revision or hearing, or the determination was vacated by an appropriate court, then, as Defendant stated, "[A]n 'effective' order loses its 'effective' status" (DN 21 PageID 425, 432).

Finally, Defendant turns to the Supreme Court's opinion in <u>Lucia v. SEC</u> and whether the actions of those working in the District Director's office have the ability to impose interest liability (<u>Id.</u> at PageID 438-39).   Defendant offers an interesting dilemma: Are those working in the District Director's office "mere employees" that do not hold the proper authority to impose interest liability, or do those workers maintain "significant authority" which would subject them to the Article II Appointments Clause of the Constitution?   *See* <u>Lucia v. SEC</u>, 138 S. Ct. 2044 (2018).

Plaintiff's replies by quoting the Southern District of Ohio's decision in <u>Reich v. Youghiogheny & Ohio Coal Co.</u> which states that a liable mine operator "would have to pay interest assessed on the money during the period between actual payment and final determination of the operator's liability.   Otherwise, the Fund would not be fully compensated for the loss it incurred by paying a debt which was ultimately determined to be the operator's obligation; it would lose the time value of that money while the operator would benefit from the use of the money" (DN 23 PageID 468).   <u>Reich v. Youghiogheny & Ohio Coal Co.</u>, 858 F.Supp. 1381, 1392 (S.D. Ohio 1994), *aff'd*, 66 F.3d 111 (6th Cir. 1995).

Additionally, Plaintiff states that Defendant conflates two issues: "when is a responsible mine operator required to begin the payment of black lung benefits to a claimant," and "what is

the scope of the responsible mine operator's liability for the payment of interest once an award of benefits becomes final?" (DN 23 PageID 468). Thus, Plaintiff argues, 20 C.F.R. § 725.502's statement that benefits are not due until thirty days after "effective order" does not actually address the scope of interest liability (Id.). Instead, "interest shall commence to accumulate 30 days after the date of the determination that such an award should be made" (Id. at PageID 469) (citing 30 U.S.C. § 932(d)); *see also* 20 C.F.R. § 725.608. Further, Plaintiff quotes § 725.608, which reads:

> In any case in which an operator is liable for the payment of retroactive benefits, the beneficiary shall also be entitled to simple annual interest on such benefits, computed from 30 days after the date of the first determination that such an award should be made. The first determination that such an award should be made may be a district director's initial determination of entitlement, an award made by an administrative law judge or a decision by the Board or a court, <u>whichever is the first such determination of entitlement made upon the claim</u>.

(DN 23 PageID 469) (citing 20 C.F.R. §608(a)(2)) (emphasis in original). Plaintiff notes that "Defendant was liable of the payment of retroactive benefits to Mr. Alsbrooks for the period beginning with the date of onset of his total disability due to pneumoconiosis—May 2004—through January 2005, the month before the fund commenced the payment of benefits . . ." (Id. at PageID 470 n.3).

Plaintiff also contested Defendant's description of <u>Peabody Coal Co. v. Blankenship</u>[8] and <u>Youghiogheny & Ohio Coal Co. v. Warren</u>,[9] as Plaintiff asserts that those cases both held that interest should accumulate from the initial determination from the District Director, not from the

---

8    773 F.2d 173 (7th Cir. 1985).

9    841 F.2d 134 (6th Cir. 1987).

"due" date like Defendant claims (Id. at PageID 470-71).   As for the 30 U.S.C. § 932(d), Plaintiff emphasizes the third sentence to reinforce Plaintiff's belief that interest shall accrue from the determination date, not the "due" date (Id. at PageID 473).   *See* 30 U.S.C. § 932(d) ("With respect to payments withheld pending final adjudication of liability, . . . such interest shall commence to accumulate 30 days after the date of the determination that such an award should be made."). Additionally, Plaintiff cites to 26 U.S.C. § 9501(d)(1)(A)(i) and 20 C.F.R. § 725.522(a), both of which authorize the Trust Fund to begin payments of benefits within thirty days following the initial determination by the District Director (DN 23 PageID 474-75)

Finally, Plaintiff turns to Defendant's last argument—Lucia v. SEC—to argue that Defendant's claim of "significant authority" is an "unfounded" comparison to "the routine administrative functions of district directors" (Id. at PageID 475).   Plaintiff recounts that the SEC's administrative law judges exercised authority "comparable to that of a federal district judge" and argues that the district directors do not exercise wide authority, but rather "limited and narrow claim handling authority" (Id. at PageID 476).   This limited authority would label district directors as "lesser functionaries" which do not need to comply with the agency-head appointment requirement (Id.).   The Supreme Court in Lucia utilized several nonexclusive factors which may indicate whether an employee wields, and Plaintiff asserts that do not align with those factors because district directors do not: 1) hold formal hearings; 2) take testimony; 3) "critically shape" the administrative record by evidentiary rulings; nor do they 4) have the power to enforce compliance with discovery orders (Id. at PageID 476-78).   Lucia v. SEC, 138 S.Ct. 2044, 2052-54 (2018).   In contrast to Defendant's stance, Plaintiff asserts that "Defendant's liability here did not arise because the district director imposed it.   Defendant's liability arose only after it had

exercised its opportunity for a de novo hearing before an administrative law judge and appeal to the Benefits Review Board . . ." (DN 23 PageID 480). Thus, district directors' role is computation of the interest payable, as a result of the statute's imposition of interest liability (Id.).

2. Defendant's Motion for Summary Judgment

Turning now to Defendant's motion, the arguments presented in the attached memorandum reiterate many of the same arguments presented in the response to Plaintiff's motion (*compare* DN 17-1 *with* DN 21). Primarily, Defendant's first argument proffers the argument that the interest never began accruing because "all benefits were paid prior to 'the time required'—the thirty day period following a determination that was later vacated (DN 17-1 PageID 145-47). To bolster this assertion, Defendant compares the regulatory text of the current version of 20 C.F.R. § 725.502(a)(1) ("Benefits shall be considered due after the issuance of an effective order . . .") and the 1997 version of 20 C.F.R. § 725.522(a) ("[T]he payment of benefits to a claimant . . . shall commence within no more than 30 days following an initial determination of eligibility . . .") (Id. at PageID 147). Additionally, Defendant asserts that "the District Director never fulfilled its obligation of issuing a computation of benefits payable for periods prior to the effective date[,]" and this failure prevented the benefits payments from becoming due (Id. at PageID 146).

The main crux of Defendant's argument is two-fold. First, since a hearing before an administrative law judge was requested, then the District Director's Proposed Decision and Order did not become "final" or "effective" (Id. at PageID 150) (citing 20 C.F.R. § 725.419(d)). Second, since the ALJ's Decision and Order was, at least partially, vacated by the Benefits Review Board, and the Board's decision to vacate rendered the earlier findings no longer "effective" to satisfy 20 C.F.R. § 725.502 (Id. at PageID 146-47, 152-53).

13

Additionally, Defendant argues that the District Director's Proposed Decision and Order could not "trigger interest accumulation because it was not 'the determination that such an award should be made' under 30 U.S.C. Section 932(d)[,]" and an "order" must be delivered by a court or judge in order to be effective (Id.). Thus, the only "effective" order that triggers interest accrual would be the November 2012 Decision and Order by the ALJ, which was ultimately affirmed by the Benefits Review Board (Id. at PageID 153). Defendant relies upon previous correspondence with a Senior Claims Examiner who purportedly advised Defendant that "interest would not begin to accrue for benefits due to the claimant until a decision was considered final[,]" and the ALJ's Decision and Order would not be considered final until the dispute was resolved by the Benefits Review Board (Id. at PageID 153-54).

Defendant alternatively argues if 20 C.F.R. § 725.608 does compel interest accumulation at that stage, then it is arbitrary and capricious and should be struck down under the *Chevron* Doctrine (DN 17-1 PageID 155-56). When reviewing the two-step analysis detailing the *Chevron* Doctrine, Defendant claims that "the agency or District Director's interpretation in this case[,] that the federal regulations somehow make it possible for interest to begin accruing based upon only a proposed award and when payment is made within the time required, is not entitled to *Chevron* deference" (Id. at PageID 156).

Finally, as noted previously, Defendant asserts the claim that the District Director in this matter possesses "significant authority" but was not properly appointed, in violation of the Appointments Clause of the Constitution, as described in Lucia v. SEC, 138 S. Ct. 2044 (2018).

Plaintiff's response begins by claiming that Defendant has improperly conflated when an operator is required to make payments with the scope of interest liability (DN 20 PageID 400).

14

The regulations pertaining to interest, Plaintiff asserts, detail that interest begins to accrue thirty days after the first determination that such a benefits award should be made (Id. at PageID 401-02) (citing 20 C.F.R. § 725.608).

Next, like Plaintiff's motion for summary judgment and the related filings, Plaintiff claims that Youghiogheny & Ohio Coal Co v. Warren, 841 F.2d 134 (6th Cir. 1987), supports Plaintiff's position, and Defendant's contention regarding the differences between the past and present versions of § 725.608 is not substantiated (Id. at PageID 402-03). After Plaintiff's analysis of § 725.608, Plaintiff asserts that "the scope of the responsible mine operator's liability for the payment of interest once an award of benefits becomes final is the same today as it was when the Sixth Circuit decided *Youghiogheny & Ohio Coal Co. v. Warren*, holding that interest accrues beginning thirty days after the initial determination of entitlement" (Id. at PageID 403).

Even though the Benefits Review Board vacated and remanded the ALJ's decisions, Plaintiff claims that Defendant's interest obligations still prevailed because Defendant was ultimately found liable for the benefits payments (Id. at PageID 404). The Benefits Review Board's order vacating the ALJ's decision only "suspend[ed] Defendant's obligation to pay benefits until a new effective award was issued, [but] that does not mean that Defendant should not be assessed interest during those periods" (Id.).

Plaintiff notes that it is unfortunate that a Senior Claims Examiner provided Defendant with incorrect information about when interest would begin accruing (Id. at PageID 404-05). However, the information provided "cannot estop Plaintiff[] from seeking to enforce Defendant's liability for interest" (Id. at PageID 405) (citing Estate of James v. United States Dep't of Agric., 404 F.3d 989, 995-96 (6th Cir. 2005)). Plaintiff argues that "estoppel against [the] government

15

requires, at least, proof of intentional or reckless affirmative misconduct by [the] government, and proof that the party asserting estoppel reasonably relied on the erroneous information" (Id.).

Finally, Plaintiff confronts Defendant's arguing about authority under the Appointments Clause and Lucia v. SEC (Id. at PageID 407-12). Like in Plaintiff's reply to Defendant's response, Plaintiff asserts that the district directors do not wield authority comparable to a federal judge or even an administrative law judge (Id. at PageID 408). Instead, district directors are more akin to "lesser functionaries" who do not need agency-head appointments (Id.). Plaintiff highlights this minimalized authority by noting that the adjudication authority provided to deputy commissioners under the Longshore and Harbor Workers' Compensation Act[10] was eventually bestowed to administrative law judges, while the administrative and processing duties were vested to the district directors (Id. at PageID 408-09). Moreover, "contrary to Defendant's assertion, the district director does not 'impose interest liability[,]' . . . [r]ather a responsible mine operator's liability for interest arises by operation of law under 30 U.S.C. § 934(b)(1)" (Id. at PageID 412).

In reply, Defendant asserts that Plaintiff failed to address a relevant portion of 30 U.S.C. § 932(d), specifically where it states that interest shall accrue if payment is not made within the time required (DN 22 PageID 446). Additionally, with Mrs. Alsbrooks not a party to this case, Defendant claims that 20 C.F.R. § 725.608(a) does not apply, because § 725.608(a) relates to interest entitlement to a claimant (Id. at PageID 447). Further, Defendant reiterates that 20 C.F.R. § 725.608(a)(1) and (b) utilizes the term "due," while the other subsections in § 725.608(a) do not contain this term (Id. at PageID 447-48). As Defendant requested a hearing before an

---

10  Provisions from the Longshore and Harbor Workers' Compensation Act was incorporated into the BLBA. 30 U.S.C. § 932(a); see Thacker v. Old Republic Ins. Co., 416 F.Supp.3d 651, 656-57 (E.D. Ky. 2019).

administrative law judge, Defendant contends that the initial determination by the District Director never became "effective" and payments did not become "due" (Id. at PageID 449).  Continuing, Defendant compares prior versions of § 725.608 with the current version to emphasize the change in when payments are due (Id. at PageID 450-51).

Subsequently, Defendant turns to the argument that awarding prejudgment interest in BLBA cases is arbitrary and capricious (Id. at PageID 451-53).  Interest "force[s] operators into a Cornelian dilemma, where both courses of action would lead to harmful effects, specifically whether to pay out benefits prematurely, before the issuance of an effective order, or to assume potential interest liability for claims where entitlement is not clear and obvious" (Id. at PageID 452).  To minimalize the argument about making the Trust Fund "whole," Defendant discusses the excise tax on coal which provides capital to the Trust Fund (Id. at PageID 452-53).

Next, when discussing the Lucia and Appointments Clause argument, Defendant concedes that the district directors are "mere employees," but the ability to impose prejudgment interest exceeds their limited authority (Id. at PageID 453-55).  In response to the statute imposing liability, Defendant asserts that the District Director's initial determination is the driving force which starts the clock before interest may accrue, but that time may only be tolled when a hearing is requested (Id. at PageID 454-57).

Finally, Defendant asserts that Plaintiff "wholly ignore[d] [Defendant]'s argument related to the Chevron doctrine" (Id. at PageID 458).  Defendant claims "the law plainly reflects the intentions of Congress, as well as the values and certainty, by stating that 'the time required' for an operator to pay benefits is when they become 'due'" (Id.) (citing 30 U.S.C. § 932(d); 20 C.F.R. § 725.502(b)(2); Thacker v. Old Republic Insur. Co., 416 F.Supp.3d 651, 657-58 (E.D. Ky. 2019)).

Thus, the "interpretation . . . that the federal regulations somehow make it possible for interest to begin accruing based upon only a proposed award and when payment is made within the time required, is not entitled to *Chevron* deference" (Id. at PageID 459).

## V. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). However, a "genuine" issue is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Qualicare-Walsh, Inc. v. Ward, 947 F.2d 823, 826 (6th Cir. 1991). When a party files a motion for summary judgment, they bear the responsibility to "demonstrate the absence of a genuine issue of material fact[,]" and during the court's determination, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to [be] drawn in his favor[.]" Taft Broad. Co. v. United States, 929 F.2d 240, 247 (6th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson, 477 U.S. at 255) (alteration in original). Thus, "[t]he judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict[.]" Mitchell v. Toledo Hosp., 964 F.2d 577, 581-82 (6th Cir. 1992) (quoting Anderson, 477 U.S. at 252) (emphasis omitted). "The mere existence of a scintilla of evidence in support of the [movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." Id. at 581 (quoting Anderson, 477 U.S. at 252).

Additionally, "the standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."  Taft Broad. Co., 929 F.2d at 248 (citing Home for Crippled Children v. Prudential Ins. Co., 590 F. Supp. 1490, 1495 (W.D. Pa. 1984)).   Further, the Sixth Circuit continued by quoting the Federal Circuit:

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts (citations omitted). Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

Id. (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)); *see also* Begnaud v. White, 170 F.2d 323, 327 (6th Cir. 1948) (the fact that both parties move for summary judgment does not require the court to find that no issue of fact exists).

## B.  Appointments Clause

The undersigned will first discuss the Appointments Clause argument asserted by Defendant.   In its motion, Defendant claims that the employees of the District Director's office are "mere employees" which do not hold the authority to trigger interest accumulation, or the employees wield "significant authority" and would need to comply with the Appointments Clause (DN 17-1 PageID 157).   If the members of the District Director's office possessed "significant authority," as Defendant posits, and those members were not constitutionally appointed by "the President, a 'Court[] of Law,' or a 'Head[] of Department[]'" then the undersigned would be required to vacate the determination and remand for new proceedings before a new adjudicator. Jones Bros. v. Sec'y of Labor, 898 F.3d 669, 679 (6th Cir. 2018) (alterations in original); *see also*

Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018) ("This Court has also held that the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official. . . . To cure the constitutional error, another ALJ . . . must hold the new hearing . . .").

In Lucia, the Supreme Court was required to determine whether administrative law judges in the Securities and Exchange Commission were considered "'Officers of the United States' or simply employees of the Federal Government." Lucia, 138 S. Ct. at 2051. If they were officers, then "[o]nly the President, a court of law, or a head of department can [properly appoint the officer to comply with the Appointment Clause of the Constitution]." Id.; U.S. CONST. Art. II, § 2, cl. 2. The Court distinguished between "mere employees" whose duties were "occasional or temporary rather than continuing and permanent" and did not "exercise[e] significant authority" which may be utilized by officers. Lucia, 138 S. Ct. at 2051-52 (citing United States v. Germaine, 99 U.S. 508 (1879); Buckley v. Valeo, 424 U.S. 1 (1976); Freytag v. Comm'r, 501 U.S. 868 (1991)).

In Freytag, the Court determined whether "special trial judges" of the United States Tax Court were "Officers" by considering several factors: whether the special trial judge takes testimony, rules on the admissibility of evidence, has the power to enforce compliance with discovery orders, exercises significant discretion, and punishes contemptuous conduct. Freytag, 501 U.S. at 881-82; Lucia, 138 S. Ct. at 2052-53. The presence of these factors gives the Tax Court's special trial judges and the SEC's administrative law judges "nearly all the tools of federal trial judges." Lucia, 138 S. Ct. at 2053. Therefore, both were considered "Officers" and needed to be properly appointed. Id. at 2055-56; Freytag, 501 U.S. at 882.

The Sixth Circuit has noted that the administrative law judges for the Department of Labor, much like the administrative law judges for the Securities and Exchange Commission, "preside over trial-like hearings[,] . . . shape the administrative record by taking testimony, regulat[e] document production and depositions, rul[e] on the admissibility of evidence, receiv[e] evidence, rul[e] on dispositive and procedural motions, and issu[e] subpoenas." Jones Bros. v. Sec'y of Labor, 898 F.3d 669, 679 (6th Cir. 2018). Thus, the administrative law judges must be properly appointed to satisfy the constitutional requirement. Id. However, the undersigned has yet to find a case which has previously considered whether the same would hold true when examining the District Director and those in the Office of Workers Compensation Programs.

However, such an analysis is not necessary in this matter, as Defendant has not properly preserved such an issue. Nowhere in the filings has either party stated that the issue was presented to the prior adjudicators (see generally DN 1, 6, 16, 17, 17-2, 20, 21, 22, 23).

"Issue exhaustion requirements in administrative proceedings derive from either statute or regulation or, failing both, judicial prudence." Joseph Forrester Trucking v. Dir., OWCP, 987 F.3d 581, 587 (6th Cir. 2021) (citing 4 Charles H. Koch, Jr. & Richard Murphy, Administrative Law and Practice § 12:22 (3d ed. 2020)). The Sixth Circuit has stated that "the Black Lung Benefits Act contains no explicit statutory exhaustion requirement[,]" but the regulations pertinent to the Benefits Review Board requires petitioners to "list the specific issues to be considered[,]" which the Sixth Circuit construed as "a regulatory issue exhaustion requirement." Id. (citing Island Creek Coal Co. v. Bryan, 937 F.3d 738, 749 (6th Cir. 2019); 20 C.F.R. § 802.211(a)) (emphasis added). "Black lung benefits adjudication regulations require that litigants raise issues before the ALJ as a prerequisite to review by the Benefits Review Board[, and] [t]he Board's

longstanding practice of treating issues not raised below as forfeited confirms this conclusion."[11] Id. Further, the Sixth Circuit saw "no reason to believe that the Department of Labor's exhaustion requirement derogates statutory authority, conflicts with other regulations, or has otherwise been applied in an arbitrary or inconsistent manner." Id. at 589 (citing Bryan, 937 F.3d at 747).

The undersigned notes that in April 2021, two months after the Sixth Circuit's decision in Joseph Forrester Trucking, the Supreme Court overturned a Sixth Circuit opinion and addressed whether petitioners for disability benefits under the Social Security Administration had forfeited the Appointment Clause issue if the petitioner failed to object during the administrative proceedings. Carr v. Saul, 141 S. Ct. 1352, 1356, 1362 (2021). The Court found that the petitioners had not forfeited or waived the issue. Id. Specifically, the Court stated, "Where . . . claimants are not required to exhaust certain issues in administrative proceedings to

---

11 Later in the opinion, the Sixth Circuit reinforces its opinion by citing to several Benefits Review Board decisions which all contain forfeited issues due to no objection being previously raised before the administrative law judge:

> Consistent with this regulatory backdrop, the Board's longstanding practice has been to deem forfeited those objections not raised with the ALJ. For decades, the Board has routinely cited, with near black-letter authority, the principle that issues not raised before the ALJ are forfeited. See, e.g., Powell v. Serv. Emps. Int'l, Inc., No. 18-0557, 2019 WL 4201393, at *3 (Ben. Rev. Bd. Aug. 8, 2019); Johnson v. Royal Coal Co., No. 01-0388, 2002 WL 32301641, at *4-5 (Ben. Rev. Bd. Feb. 28, 2002); Dankle v. Duquesne Light Co., No. 95-0957, 1995 WL 17049134, at *2 (Ben. Rev. Bd. Aug. 30, 1995); Prater v. Dir., OWCP, No. 81-1278, 1986 WL 66307, at *1 (Ben. Rev. Bd. Feb. 10, 1986); see also Black Lung Deskbook, Benefits Review Board Policies and Procedures, U.S. Dep't of Labor, Part V § A.9 (rev. Sept. 2010) ("The appealing party is limited in the issues it may raise since the Board follows the well established principle that issues not effectively presented to an [ALJ], where ample opportunity to do so has been afforded, cannot be raised on appeal."). . . . True, the Board, both here and elsewhere, has not always cited regulatory authority when invoking its forfeiture doctrine, opting instead at times to rely upon general principles of waiver and forfeiture. See, e.g., Kiyuna v. Matson Terminals, Inc., No. 19-0103, 2019 WL 2881243, at *2 (Ben. Rev. Bd. June 25, 2019). But text and structure convincingly demonstrate that Department regulations require parties to raise issues before the ALJ to avoid forfeiting them.

Joseph Forrester Trucking v. Dir., OWCP, 987 F.3d 581, 588-89 (6th Cir. 2021).

preserve them for judicial review, claimants who raise those issues for the first time in federal court are not untimely in doing so." Id. at 1362. This case may appear to completely undercut the Sixth Circuit's previous determination and support Defendant's objection, but there is one crucial difference. "*Lucia* . . . arose from proceedings before the Securities and Exchange Commission . . . in which a statutory issue-exhaustion requirement applies[,]" while the Social Security Administration contains no such exhaustion requirement, statutory or regulatory. Id. (citing 15 U.S.C. § 78y(c)(1)). In the BLBA context, the Sixth Circuit correctly noted that the Benefits Review Board requires a supporting document which "[s]pecifically states the issues to be considered by the Board[,]" and if an issue is not presented to the Board, then it is deemed forfeited. 20 C.F.R. § 802.211(b); Joseph Forrester Trucking, 987 F.3d 581 (6th Cir. 2021); *see also* Island Creek Coal Co. v. Young, 947 F.3d 399, 402-03 (6th Cir. 2020); Elkhorn Eagle Mining Co. v. Higgins, 811 F. App'x 318, 321-23 (6th Cir. 2020).

However, another aspect that must be considered is whether Defendant's untimely Appointments Clause challenge falls under an exception, which would allow the undersigned to consider the argument. "[T]he court should still hear [a] claim under an exception for facial constitutional challenges or for extraordinary circumstances." Higgins, 811 F. App'x at 323-24. Much like Higgins, Defendant has not presented a facial constitutional challenge under the BLBA statute. Id. at 324. Defendant "does not actually challenge how the [District Director] was appointed under the BLBA statute. Rather, [Defendant] challenges how the Department of Labor chose *to apply* the BLBA statute in having the [District Director] appointed by someone other than the Secretary of Labor." Id. (emphasis in original). Therefore, Defendant fails to meet the first exception. The other exception is for "extraordinary circumstances." Id. As the Sixth Circuit

noted that its previous decision in <u>Jones Bros. Inc. v. Sec'y of Labor</u>, 898 F.3d 669 (6th Cir. 2018), was the result of an "absence of legal authority" relating to the pertinent issue was sufficient to meet the "extraordinary circumstances" threshold. <u>Id.</u> "However, neither the BLBA nor its implementing regulations 'contain similar language' to create such an exception." <u>Id.</u> (citing <u>Island Creek Coal Co. v. Bryan</u>, 937 F.3d 738, 753 (6th Cir. 2019)). Defendant "fails to identify any extraordinary circumstances that would justify this . . . exception." <u>Id.</u> "No precedent prevented [parties] from bringing the constitutional claim before [the Supreme Court's holding in <i>Lucia</i>]. <i>Lucia</i> itself noted that existing case law 'says everything necessary to decide this case.'" <u>Id.</u> at 325 (quoting <u>Island Creek Coal Co. v. Wilkerson</u>, 910 F.3d 254, 257 (6th Cir. 2018)). Thus, Defendant fails to meet the threshold to qualify for the "extraordinary circumstances" exception.

Therefore, based upon the previous analysis, Defendant has forfeited its Appointments Clause challenge, and Defendant's challenge does not align with one of the exceptions. Thus, the undersigned declines to review the challenge on the merits.

## C. <i>Chevron</i> Deference Doctrine

Next, as previously noted, Defendant has argued that the administrative deference articulated in <u>Chevron, U.S.A., Inc. v. NRDC, Inc.</u> is inapplicable to the present matter (DN 17-1 PageID 155-56; DN 21 PageID 433-34). This assertion is based upon Defendant's claim that 30 U.S.C. § 932(d) clearly and unambiguously states that interest should begin accruing when payment becomes "due" and remains unpaid (<u>Id.</u>). Alternatively, if the applicable regulation, 20 C.F.R. § 725.608, does require interest accrual to begin thirty days after the initial determination, then the regulation, and Plaintiff's argument in this matter, should be considered arbitrary and capricious (<u>Id.</u>). Plaintiff has not responded to this claim.

"The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left . . . by Congress." Chevron, 467 U.S. 837, 843 (1984) (quoting Morton v. Ruiz, 415 U.S. 199, 231 (1974)) (ellipses in original). Thus, "an administering agency's interpretation of a statute 'is entitled to deference'[12] from the courts" provided both steps of Chevron's two-step process are met. Gun Owners of Am., Inc. v. Garland, 992 F.3d 446, 454-55 (6th Cir. 2021) (footnote added).

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. . . . If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

---

12 "[B]ecause the Department of Labor does make rules and formulate policy concerning black lung benefits, the Director's interpretation of the BLBA is entitled to some deference." Navistar, Inc. v. Forester, 767 F.3d 638, 644 (6th Cir. 2014). However, "[t]he degree of deference to be given depends on whether that interpretation is contained in a regulation issued following notice and comment rulemaking." Id. (citing Chao v. OSHRC, 540 F.3d 519, 523 (6th Cir. 2008)). If the interpretation is based upon "a more informal medium not intended to have the force of law, such as a litigation position in a brief, [then] it is afforded a lesser level of deference known as Skidmore deference." Id. at 645. But, "[i]f the agency's interpretation is contained in a regulation or other form intended to have the force of law, it is entitled to substantial deference under Chevron[.]" Id. at 644. "When the construction of an administrative regulation rather than a statute is at issue, deference is even more clearly in order." Udall v. Tallman, 380 U.S. 1, 16 (1965); Peabody Coal Co. v. Blankenship, 773 F.2d 173, 175 (7th Cir. 1985); see also Navistar Int'l Trasp. Corp. v. EPA, 858 F.2d 282, 286 (6th Cir. 1988) ("Our standard of review in cases involving conflicting interpretations of an administrative regulation is to give considerable deference to the administrative agency's interpretation. . . . An administrative agency's interpretation of its own regulation is accorded considerable deference on judicial review unless it is inconsistent with the terms of the regulation. . . .").

<u>Chevron</u>, 467 U.S. at 843-44; *see also* 5 U.S.C. § 706; <u>Tiger Lily, LLC v. United States HUD</u>, 992 F.3d 518, 522 n.3 (6th Cir. 2021) ("When reviewing an agency's construction of a statute it administers, we generally apply the two-step Chevron framework that requires us (1) to determine whether the statute is unambiguous, and (2) if so, to defer to the agency's construction if it is permissible."); <u>Arangure v. Whitaker</u>, 911 F.3d 333, 337-39 (6th Cir. 2018).

Here, the relevant statute is 30 U.S.C. § 932(d), where it reads in the pertinent part:

> If payment is not made within the time required, interest shall accrue to such amounts at the rates set forth in section 934(b)(5) of this title for interest owed to the fund. With respect to payments withheld pending final adjudication of liability, in the case of claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981, such interest shall commence to accumulate 30 days after the date of the determination that such an award should be made.

Defendant correctly states that this is unambiguous to the expressed congressional intent. Thus, Defendant is correct when claiming that administrative deference under <u>Chevron</u> is inapplicable for 30 U.S.C. § 932. However, as explained below, the Court does not reach the same conclusion as Defendant when determining when interest begins to accrue.

Even with administrative deference being inapplicable, this does not prevent the court from utilizing the applicable regulations in determining the whether the interest accrues from the initial determination or the later ALJ determination.

## D. <u>BLBA Applicable Law</u>

Continuing from 30 U.S.C. § 932(d), other relevant regulations are applicable to this dispute. Specifically, 20 C.F.R. § 725.420 recounts that "the Black Lung Disability Trust Fund shall begin the payment of benefits on behalf of an operator in any case in which the operator liable

for such payments has not commenced payment of such benefits within 30 days after the date of an initial determination of eligibility by the Secretary." Id. § 725.420(a) (citing 26 U.S.C. § 9501(d)(1)(A)). However, 26 U.S.C. § 9501 also states that an operator may be liable for payment of benefits if payment is not made within thirty days after that payment is due. Id. § 9501(d)(1)(A)(ii). "If a notified operator refuses to commence payment of a claim within 30 days from the date on which an initial determination is made under [§ 725.420], benefits shall be paid by the fund to the claimant in accordance with § 725.522, and the operator shall be liable to the fund . . . for all benefits paid by the fund on behalf of such operator, and, in addition, such penalties and interest as are appropriate." 20 C.F.R. § 725.420(c).

Further, 20 C.F.R. §725.608 proposes, "If an operator . . . fails or refuses to pay any or all benefits due pursuant to an award of benefits or an initial determination of eligibility made by the district director and the fund undertakes such payments, such operator . . . shall be liable to the fund for simple annual interest on all payments made by the fund for which such operator is determined liable, computed from the first date on which such benefits are paid by the fund, in addition to such operator's liability to the fund . . ." Id. § 725.6085(b).

As noted above, Defendant claims that 30 U.S.C. § 932(d) conveys a congressional intent to require the payments to become "due" and still remain unpaid prior to interest accruing (DN 17-1 PageID 156). However, the court comes to a different conclusion. The relevant portion of 30 U.S.C. § 932(d) reads:

> If payment is not made within the time required, interest shall accrue
> to such amounts at the rates set forth in section 934(b)(5) of this title
> for interest owed to the fund. With respect to payments withheld
> pending final adjudication of liability, in the case of claims filed on

> or after the effective date of the Black Lung Benefits Amendments
> of 1981, such interest shall commence to accumulate 30 days after
> the date of the determination that such an award should be made.

30 U.S.C. § 932(d).

The first portion of the second sentence ("With respect to payments withheld pending final adjudication of liability") is an introductory dependent clause, which creates a condition precedent to the remaining independent clause. Thus, from the plain reading of the statute, for interest to accrue, multiple considerations must be met: (1) a miner files for black lung benefits after 1981; (2) a determination that the miner is eligible for benefits payments and should be paid; (3) thirty days must pass from the date of that award determination; and (4) the operator withheld payments until the final determination. The new introductory dependent clause distinguishes the provision regarding payments withheld pending final adjudication from the previous sentence which pertains to payment not being made within the required time. Therefore, the preceding sentence is not applicable as for when interest begins to accrue on withheld payments pending final adjudication.

Further, while not directly discussing 20 C.F.R. § 725.608(b), the Sixth Circuit in Youghiogheny & Ohio Coal Co. v. Warren, 841 F.2d 134 (6th Cir. 1987), considered an earlier version of § 725.608(a).[13] In Warren, the Sixth Circuit noted, "The Director . . . agrees with the employer that § 725.608(a) requires payment of interest only from the initial determination date . . . [and] Congress appears to have seen things much as the Director does." Warren, 841 F.2d at 138. When examining the Black Lung Benefits Amendments of 1981, specifically 30 U.S.C.

---

13 The earlier version of 20 C.F.R. § 725.608 is substantially similar to the present version of the regulation. *Compare* 20 C.F.R. § 725.608(a) *with* Id. § 725.608(a) (1987). Comparing 20 C.F.R. § 725.608(a) with (b), § 725.608(a), both past and present, affects pay of benefits to the miner for failure to pay, while § 725.608(b) pertains to repayment to the Trust Fund.

§ 932(d) post-amendment, the Sixth Circuit opined that "[t]his portion of the statute was not supposed to change the date from which interest was to accrue. Rather, the legislative history indicates that it was enacted so that Congress could raise the interest rate." Id. at 139.

Courts in both the Eastern District of Kentucky and the Eastern District of Tennessee have followed the Sixth Circuit precedent that "§ 725.608(a) requires payment of interest only from the initial determination date." Byrge v. Premium Coal Co., 301 F.Supp.3d 785, 802 (E.D. Tenn. 2017); see also Templeton v. Appolo Fuels, No. 6:19-CV-71-REW, 2021 U.S. Dist. LEXIS 44894, at *9 (E.D. Ky. Mar. 10, 2021). Additionally, the Sixth Circuit in Reich v. Youghiogheny & Ohio Coal Co., 66 F.3d 111 (6th Cir. 1995), was discussing the statutory and regulatory procedure to obtain black lung benefits, and the Sixth Circuit observed:

> After an initial determination of eligibility, the [Department of Labor] is authorized to make interim payments of benefits to claimants from the Fund established pursuant to 26 U.S.C. § 9501, upon giving notice of the claim and initial determination of eligibility to the responsible operator, which may either assume responsibility for the interim payments or contest liability pursuant to the prescribed procedures. 26 U.S.C. § 9501(d)(1)(A)(1); 30 U.S.C. § 922; 20 C.F.R. §§ 725.410 - 725.420, 725.522. Coal mine operators who have been determined to be liable for benefits due to disabled claimants must secure the payment of black lung benefits. See 30 U.S.C. §§ 932, 933; 20 C.F.R. § 725.420(c). Operators who have been determined to be responsible under the Act are required to repay the Fund for the amount of benefits determined to be attributable to the operator, plus interest thereon. 30 U.S.C. § 934; 20 C.F.R. §§ 725.421(c), 725.522(b), 725.602, 725.608(b) and (c).

Id. at 114. However, the later portion of the Sixth Circuit's analysis revolves around a variation of the case before the court, making the later portion of the opinion distinguishable but persuasive.

The Sixth Circuit continued in their opinion in <u>Reich</u> to address a "medical benefits only" (MBO) claim, which originates from the Social Security Administration, but the miner could then seek health care benefits for treatment of their pneumoconiosis through the Department of Labor. <u>Id.</u> When determining interest on MBO claims, the Sixth Circuit details the same "Cornelian dilemma" that Defendant has disputed in this case. *Compare* <u>id.</u> at 116 *with* (DN 22 PageID 452). "[A]n operator must either accept the DOL's assertion that a particular claim is a proper MBO claim for which the operator is responsible, and thereby risk paying for a claim that may not be due to pneumoconiosis, or else risk incurring interest if the operator disputes the claim and it is ultimately determined to be a pneumoconiosis-related claim for which the operator is in fact responsible." <u>Reich</u>, 66 F.3d at 116. "Thus, when an operator contests an MBO claim and requests a hearing, the regulations make the operator liable for interest *from the date of payment by the Fund . . .*" <u>Id.</u> at 116-17 (emphasis in original). "This amounts to prejudgment interest." <u>Id.</u> at 117. However, the Sixth Circuit goes on to discuss the remedial nature of the BLBA and the judicial willingness to award prejudgment interest.[14] <u>Id.</u> Therefore, "Congress and the agency responsible for administering the Black Lung Benefits Act have decided that, as among

---

14          The Black Lung Benefits Act is clearly a broad remedial statute. *See* 30 U.S.C. §§ 901 – 904. Courts have generally been more willing to award prejudgment interest in claims brought under remedial statutes. *See, e.g., United States v. Northeastern Pharm. and Chem. Co., Inc.*, 579 F. Supp. 823, 852 (W.D. Mo. 1984) (discussing policy reasons for prejudgment interest awards and awarding prejudgment interest in CERCLA case) (citing *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 989 (6th Cir. 1982). *But compare Amax Coal Co. v. Director, OWCP*, 801 F.2d 958, 964 (7th Cir. 1986); *Peabody Coal Co. v. Blankenship*, 773 F.2d 173, 175-77 (7th Cir. 1985) (both holding that black lung claimants were not entitled to prejudgment interest) *with Clinchfield Coal Co. v. Cox*, 611 F.2d 47, 48 (4th Cir. 1979) (holding that the employer must pay prejudgment interest on black lung benefits) (three cases involving not MBO claims, but claims to establish initial entitlement to benefits under the Act).

Reich v. Youghiogheny & Ohio Coal Co., 66 F.3d 111, 117 (6th Cir. 1995).

the disabled miner, the coal mine operator and the Government, the operator should be the one to bear the cost of the delay attributable to the operator's questioning or contesting an MBO claim for which it is ultimately determined to be responsible." Id.

Plaintiff and Defendant both have repeatedly cited three cases through their motions and responses: Youghiogheny & Ohio Coal Co. v. Warren, 841 F.2d 134 (6th Cir. 1987); Gibraltar Coal Corp. v. Pleasant, 856 F.2d 193, 1988 U.S. App. LEXIS 11568 (6th Cir. 1988); Peabody Coal co. v. Blankenship, 773 F.2d 173 (7th Cir. 1985) (DN 16 PageID 51-54; DN 17-1 PageID 146-49; DN 20 PageID 402-03; DN 21 PageID 420, 427-32). Defendant has asserted that these cases stand for the conclusion that interest begins to accrue when payments become due (DN 17-1 PageID 146-47; DN 21 PageID 431). Plaintiff, in contrast, claims that these cases, Warren and Blankenship more specifically, stand for the argument that interest begins to accrue thirty days after the initial determination by a district director (DN 16 PageID 51-54; DN 20 PageID 402-03).

While the Court explained the persuasiveness of Youghiogheny & Ohio Coal Co. v. Warren above, Gibraltar Coal Corp. v. Pleasant directly follows and relies upon Warren. In a two-paragraph order, the Sixth Circuit found that Warren was "dispositive" on the issue of prejudgment interest. Gibraltar, 1988 U.S. App. LEXIS 11568, at *2. All parties in the case conceded that 20 C.F.R. § 725.608(a) "only permits interest to be awarded as of thirty days after the initial determination that claimant is entitled to benefits." Id. at *1.

Finally, Blankenship, a Seventh Circuit case, also focused on 20 C.F.R. § 725.608(a) and whether a claimant is entitled to prejudgment interest in his BLBA benefits award. Blankenship, 773 F.2d at 174. The Seventh Circuit stated, "[I]nterest on past due benefits accrues from the date benefits are *due*, and not from the date a claimant is eligible to receive benefits. Under the Act,

benefits are due 30 days after the deputy commissioner makes an initial determination of eligibility. *See* 20 C.F.R. §§ 725.420(b), 725.522(a). It is only then that the employer profits from the unauthorized retention of a claimant's funds." Id. at 176 (emphasis in original).

### E. Parties' Claims Under Summary Judgment Standard

Based upon the aforementioned applicable law and relevant cases, the general view would favor Plaintiff's position. However, one stark distinction is present between the applicable case law and the present matter: none of the case law have dealt with a situation where the Benefits Review Board, or other later adjudicator, vacated a portion or all of the lower adjudicator's determination. *Compare* (DN 17-2 PageID 164-254) *with* Youghiogheny & Ohio Coal Co. v. Warren, 841 F.2d 134 (6th Cir. 1987); Reich v. Youghiogheny & Ohio Coal Co., 66 F.3d 111 (6th Cir. 1995); Gibraltar Coal Corp. v. Pleasant, 856 F.2d 193, 1988 U.S. App. LEXIS 11568 (6th Cir. 1988); Peabody Coal co. v. Blankenship, 773 F.2d 173 (7th Cir. 1985); Byrge v. Premium Coal Co., 301 F.Supp.3d 785, 802 (E.D. Tenn. 2017); Templeton v. Appolo Fuels, No. 6:19-CV-71-REW, 2021 U.S. Dist. LEXIS 44894, at *9 (E.D. Ky. Mar. 10, 2021).

On July 16, 2009, the ALJ issued an "Errata Decision and Order" which found that clinical pneumoconiosis was established by x-ray evidence, Defendant failed to rebut the presumption that Mr. Alsbrooks' pneumoconiosis arose out of his coal mine employment, and total disability due to legal and clinical pneumoconiosis from coal mine employment was established by "reasoned medical opinion" evidence (DN 17-2 PageID 183-94). The presence of these criteria "established Mr. Alsbrooks' entitlement to benefits (Id. at PageID 193).

During its original review of this matter, the Benefits Review Board considered Defendant's contentions regarding the ALJ's finding of clinical pneumoconiosis and disability

causation" (Id. at PageID 237-38). The Board rejected the first argument, finding that the ALJ properly found that the x-ray film was of sufficient quality to be read for pneumoconiosis, a medical professional's opinion positively identifying pneumoconiosis from the film, and the weighing of medical opinions regarding interpretations of the film (Id. at PageID 240-41). Thus, the finding of clinical pneumoconiosis was supported by substantial evidence (Id. at PageID 241). However, the next argument, the finding of total disability due to pneumoconiosis, is where the issue arises. The Board "[a]t the outset . . . note[d] that the administrative law judge's finding at Section 718.204(c) must be vacated and the case remanded for the administrative law judge to clarify his finding thereunder" (Id. at PageID 243). The ALJ found Mr. Alsbrooks disabled due to legal and clinical pneumoconiosis, but the ALJ never determined whether legal pneumoconiosis was established (Id.). Additionally, the ALJ's finding of disability causation was determined to be "in error" as the ALJ's assignment of probative value to a medical opinion was unsubstantiated (Id. at PageID 243-45). Therefore, the Board vacated the ALJ's finding pursuant to 20 C.F.R. 718.204(c) (total disability due to pneumoconiosis) and remanded (Id. at PageID 245-46).

After the Board's opinion vacating and remanding, the same ALJ issued a "Decision and Order on Remand" on May 6, 2011 (Id. at PageID 198). In the decision, the ALJ noted that he was "directed to [determine] whether legal pneumoconiosis was established[,] . . . reconsider total disability and whether total disability was caused by pneumoconiosis" (Id.). Reviewing the medical reports, the ALJ found that legal and clinical pneumoconiosis was established (Id. at PageID 199-200). Further, the "medical opinion evidence establishe[d] total disability arising out of coal mine employment" and Mr. Alsbrooks was entitled to benefits (Id. at PageID 201-02).

Subsequently, the Benefits Review Board considered the ALJ's new decision and order (Id. at PageID 249-54). The Board initially rejected Defendant's argument regarding the ALJ discounting one of the medical opinions and found that the ALJ's discrediting was rational and supported by substantial evidence (Id. at PageID 252). But again, the Board found an issue with the ALJ's reasoning (Id. at PageID 253). The issue on this review was the lack of analysis regarding whether certain relied-upon medical opinions were sufficiently reasoned to find legal pneumoconiosis (Id.). "Specifically, the administrative law judge did not address the reasons put forward by Drs. Simpao and Baker for attributing claimant's obstructive pulmonary impairment to his coal mine dust exposure" (Id.). Thus, the Board vacated the ALJ's findings regarding the medical evidence supporting legal pneumoconiosis, vacated the ALJ's findings under 20 C.F.R. §§ 718.202(a)(4) and 718.204(c), and remanded the matter back to the ALJ (Id.).

Finally, on November 6, 2012, the same ALJ crafted a "Decision and Order *Award on Second Remand*" (Id. at PageID 205). The second remand was to "first determine whether the medical opinion evidence established the existence of legal pneumoconiosis and to reconsider the medical opinion evidence as to the cause of [Mr. Alsbrooks]'s total disability, and to explain fully the analysis and findings" (Id.). After an extensive review of the record and medical opinions, the ALJ found that Mr. Alsbrooks' obstructive airways arose out of coal mine employment, pursuant to a "well reasoned" medical opinion, which supports the finding of legal pneumoconiosis (Id. at PageID 206-09). The ALJ, for the third time, opined that total disability due to pneumoconiosis and the causation thereof was established in the record, and, as a result, Mr. Alsbrooks' is entitled to benefits payments (Id. at PageID 210).

On its third review, the Benefits Review Board considered arguments of error regarding the finding of legal pneumoconiosis from the medical opinion evidence and the finding of total disability due to pneumoconiosis (Id. at PageID 217-18). The Board rejected the first argument by finding that the ALJ's valuation of credit towards certain medical opinions, and the discounting of certain medical opinions, were reasonable and supported by substantial evidence (Id. at PageID 218-21). By properly and reasonably weighing the opinions in the record, the Board found that the ALJ's finding of total disability due to pneumoconiosis was supported by substantial evidence (Id. at PageID 221-22). Thus, on November 22, 2013, the Benefits Review Board opined the ALJ's most recent determination was supported by substantial evidence and affirmed the awarding of benefits (Id. at 222).

The Benefits Review Board, in all of its opinions, recounted the standard for entitlement of benefits:

> In order to establish entitlement to benefits under 20 C.F.R. Part 718 in a miner's claim, claimant must establish the existence of pneumoconiosis, that the pneumoconiosis arose out of coal mine employment, and that the pneumoconiosis is totally disabling. 20 C.F.R. §§718.3, 718.202, 718.203, 718.204. Failure to establish any one of these elements precludes entitlement. *Trent v. Director, OWCP*, 11 BLR 1-26 (1987); *Perry v. Director, OWCP*, 9 BLR 1-1 (1986) (en banc).

(DN 17-2 PageID 251); *see also* (DN 17-2 PageID 218, 239).

"[V]acate" is defined as "[t]o nullify or cancel; make void; invalidate[.]" *Vacate*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Vacatur (Vacate)*, BOUVIER LAW DICTIONARY (Desk ed. 2011-12) ("To vacate a ruling is to annul it, treating it as if it had not been issued."); Dodrill v. Ludt, 764 F.2d 442, 444-45 (6th Cir. 1985) ("When [Plaintiff] won his appeal

and the judgment was vacated, all such factual determinations were vacated with it, and their preclusive effect surrendered.").

As previously noted, the Board's first two reviews of the ALJ's decisions vacated the ALJ's findings under 20 C.F.R. §§ 718.202(a)(4) and 718.204(c) and remanded the matter back to the ALJ (Id. at PageID 245-46, 253). When the Benefits Review Board vacated the ALJ's findings, specifically the findings pertaining to 20 C.F.R. § 718.204(c), the Board had determined that the ALJ's analysis and findings were insufficient for Mr. Alsbrooks to be eligible for payments. 20 C.F.R. § 725.502 specifies that "benefits under the Act shall be paid when they become due." Id. § 725.502(a)(1). But "[b]enefits shall be considered due after the issuance of an effective order requiring the payment of benefits by a district director, administrative law judge, Benefits Review Board, or court[.]" Id. "An effective order shall remain in effect unless it is vacated by an administrative law judge on reconsideration[.]" Id. Thus, by vacating the prior determination, the Benefits Review Board had nullified or invalidated the District Director's and the ALJ's determination of eligibility, and no effective order had been issued at that point. When the ALJ opined his third determination, the opinion that was ultimately affirmed by the Benefits Review Board, then that determination would become effective when filed "in the office of the district director[.]" Id. § 725.502(a)(2).

While the District Director's initial determination was issued and filed in the office of the district director on February 3, 2005 (DN 17-2 PageID 166-67), the Benefits Review Board's later opinions vacating the ALJ's determination invalidated any effect on that filing. Interest could not then accrue on benefits that Mr. Alsbrooks was not eligible for under the Board's vacating opinion. As such, when the ALJ's third opinion, issued on November 6, 2012 and sent to the office of the

district director on the same day, a new "effective" order had been created, and interest may only begin accruing on that order.

Therefore, given that the material facts of this matter are undisputed, Plaintiff has failed to show that it is entitled to judgment as a matter of law, while Defendant has shown such entitlement. As such, Plaintiff's motion for summary judgment (DN 16) is denied, and Defendant's motion for summary judgment (DN 17) is granted.   Now, the final issue is the matter of remedy.

## F.  Remedy

Given that the determination of when interest begins to accrue has been dealt with, the issue of remedy becomes rather affable or conciliatory.   Both parties have included exhibits which contain requests for admissions and responses to such requests by each party (DN 16-2 PageID 124-28; DN 17-2 PageID 382-87).   The requests and responses stipulate to the remedies if either party was to succeed in their motion for summary judgment (Id.).   In Plaintiff's response to Defendant's request for admissions, Plaintiff denied that interest began to accrue until thirty days after issuance of the ALJ's decision on November 6, 2012, but, in the alternative, Plaintiff admitted that owed sums in certain regards and should be refunded in others (DN 17-2 PageID 383-85). When calculating the amounts owed and reducing the amount by the amounts to be refunded, Defendant then owes the Black Lung Trust Fund a sum of $1,594.18.

## VI. CONCLUSION

Based upon the aforementioned analysis, when evaluating both party's motion individually and on its own merits, taking care in each instance to draw all reasonable inferences against each party when considering their motion, the language of the BLBA, relevant case law, and the applicable statutes and regulations support Defendant's contentions in this case.

This case presents a thought-provoking disposition. Defendant's motion for summary judgment was supported by the applicable law, as a result of the Benefit Review Board's decision to vacate the ALJ's determination. But the Board's decision was not due to any mistake, omission, or insufficiency of evidence by Plaintiff or Mr. Alsbrooks. Instead, the Board's ruling was based upon the ALJ's opinion containing insufficient analysis—something Plaintiff and Mr. Alsbrooks could not control. As the undersigned previously noted, without the Board's decision to vacate, "the general view [of applicable law and relevant cases] favor Plaintiff's position" (*supra* pp. 32). However, to use the Eastern District of Kentucky's phrasing, it is clear that both parties may "disagree[] with the operative effect of the relevant BLBA provisions and regulations, [but] . . . grievances would be best addressed by the legislature, not the judiciary." Thacker v. Old Republic Ins. Co., 416 F.Supp.3d 651, 670 (E.D. Ky. 2019).

For the foregoing reasons **IT IS HEREBY ORDERED** as follows:

(1) Defendant's motion for summary judgment (DN 16) is **GRANTED**;

(2) Plaintiff's motion for summary judgment (DN 17) is **DENIED**;

(3) Judgment is entered **IN FAVOR OF DEFENDANT**;

(4) Defendant shall pay the Black Lung Trust Fund **$1,594.18** for interest accrued from November 2012 through December 2013;

(5) This is a **FINAL** judgment, and the matter is **STRICKEN** from the active docket of the Court.

*H. Brent Brennenstuhl*

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

June 21, 2021

Copies:     Counsel of Record