UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:20-CV-00010-HBB

MARTIN J. WALSH,[1] SECRETARY
DEPARTMENT OF LABOR et al                                                                   PLAINTIFF

VS.

CHEVRON MINING, INC.                                                                                   DEFENDANT

**MEMORANDUM OPINION
AND ORDER**

## I. BACKGROUND

This matter is before the Court on Defendant Chevron Mining, Inc.'s motion to alter, amend, and provide relief from the judgment previously filed in this matter (DN 26). Plaintiff has responded (DN 27), and the time period for Defendant to file a reply has expired. *See* LR 7.1(c). The matter is ripe for adjudication. For the reasons below, Plaintiff's motion (DN 26) is **GRANTED IN PART** and **DENIED IN PART**.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11).

---

[1] When this matter commenced, Eugene Scalia was the Secretary for the Department of Labor (DN 1). On January 20, 2021, Milton Al Stewart became Acting Secretary of Labor (*see* DN 16 PageID 42 n.1). However, on March 23, 2021, Martin J. Walsh was sworn in as the 29th Secretary of Labor. *Secretary of Labor Martin J. Walsh*, DEP'T OF LABOR, https://www.dol.gov/agencies/osec. Pursuant to FED. R. CIV. P. 25(d), Martin J. Walsh has been substituted as Plaintiff in this case.

## II. JURISDICTION

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1345, 30 U.S.C. § 934(b)(4)(B), and 33 U.S.C. § 921(d) which was incorporated into the Black Lung Benefits Act ("BLBA") by 30 U.S.C. § 932(a).  Further, this Court is the proper venue pursuant to 28 U.S.C. §§ 97(b) and 1391(b), 30 U.S.C. § 934(b)(4)(B) and 33 U.S.C. § 921(d) which was incorporated into the BLBA by 30 U.S.C. § 932(a).

## III. SUMMARY OF THE FACTS

This case is a civil action in which Plaintiff is seeking reimbursement to the Black Lung Disability Trust Fund ("Trust Fund") from Defendant (DN 1, ¶ 1).  In addition to reimbursement, Plaintiff is also seeking "enforcement of an administrative law judge's final decision and order against Chevron Mining, awarding benefits to its former employee, James R. Alsbrooks (deceased), pursuant to the BLBA" (Id.).

Defendant is the successor to Pittsburg & Midway Coal Company,[2] which operated a coal mine in Hopkins County, Kentucky (Id. at ¶ 4).  *See* 30 U.S.C. § 802(h)(2) (defining "coal mine"); 20 C.F.R. § 725.101(a)(12) (same).  During its operation and the relevant time periods in this matter, Pittsburg & Midway and Defendant were classified as "operators" within the definitions of the BLBA (Id.).  30 U.S.C. § 802(d) ("'operator' means any owner, lessee, or other person who operates, controls, or supervises a coal . . . mine"); 20 C.F.R. § 725.101(a)(23).  The BLBA required Pittsburg & Midway to either secure insurance for benefits payments or qualify as a

---

[2] It is uncertain when Defendant ultimately became the successor to Pittsburg & Midway Coal Company, as Defendant has denied the paragraph in the complaint pertaining to a merger (DN 1 ¶ 22; DN 6 ¶ 2).  However, Defendant admits to being the successor to Pittsburg & Midway (*compare* DN 1 ¶ 17 *with* DN 6 ¶ 1). Defendant's memorandum in support of its motion for summary judgment also uses Defendant interchangeably with Pittsburg & Midway when discussing the previously-admitted request for a hearing in front of an administrative law judge (DN 17-1 PageID 138; *see also* DN 1 ¶ 20; DN 6 ¶ 1).

self-insurer (DN 1 ¶ 15). 30 U.S.C. § 933(a); *see also* (DN 17-2 PageID 170-75). Pittsburg & Midway opted for the latter and self-insured (DN 1 ¶ 16; DN 17-2 PageID 170-75).

Mr. Alsbrooks was employed by Pittsburg & Midway as a coal miner (DN 1 ¶ 14). On May 3, 2004, Mr. Alsbrooks filed a claim for BLBA benefits (Id. at ¶ 18). Several months later, on February 3, 2005, the District Director[3] issued a determination that Mr. Alsbrooks was entitled to monthly disability benefits as a result of pneumoconiosis[4] and found that Pittsburg & Midway was liable for such payments (Id. at ¶ 19; *see also* DN 17-2 PageID 164-75). Pittsburg & Midway requested a hearing before an administrative law judge and, in the interim, declined to pay benefits (DN 1 ¶ 20). Administrative Law Judge Daniel Solomon ("ALJ") issued his Decision and Order awarding benefits on July 16, 2009, and that Decision was subsequently appealed to the Benefits Review Board (DN 1 ¶¶ 23, 25; DN 17-1 PageID 138-39; DN 17-2 PageID 183-94). After two remands, the Benefits Review Board ultimately affirmed the ALJ's third Decision and Order (DN 1 ¶¶ 23, 25; DN 17-2 PageID 198-223). No further review was sought. Defendant began making monthly benefits payments to Mr. Alsbrooks, beginning in July 2009, and continued until Mr. Alsbrooks' death in June 2014 (DN 1 ¶ 24).

During and after these payments, Defendant also reimbursed the Trust Fund "for all principal amounts paid in interim months benefits and for diagnostic and medical treatment

---

3    The District Director is a position within the U.S. Department of Labor's Office of Workers' Compensation Programs, Division of Coal Mine Workers' Compensation (DN 16 PageID 43 n.2; DN 17-1 PageID 137). The District Director is "authorized to develop and adjudicate claims" under the BLBA. 20 C.F.R. § 725.101(a)(16); *see also* 20 C.F.R. §§ 725.350(b), 725.401.

4    "Pneumoconiosis, commonly called black lung disease, is a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." Zurich Am. Ins. Grp. v. Duncan, 889 F.3d 293, 296 (6th Cir. 2018) (quoting 30 U.S.C. § 902(b)) (internal quotations omitted); *see also* 20 C.F.R. § 718.201(a).

expenses" (Id. ¶ 26). Additionally, Defendant issued payments to Mr. Alsbrooks for all the past-due benefits from May 2004 through January 2005 (Id. at ¶ 27). After these payments, on June 17, 2014, the District Director contacted Defendant requesting reimbursement of the interest accrued on the principal amounts previously described (Id. at ¶ 31). Defendant disputed the District Director's assessment of interest[5] and, as a result, refused to pay the alleged interest amounts (Id. at ¶ 36). This dispute regarding interest has led to the present matter.

Plaintiff filed the complaint on January 17, 2020 (DN 1), and Defendant answered on March 18, 2020 (DN 6). As noted at the forefront, the parties have consented to the undersigned conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment (DN 11). On March 15, 2021, both parties filed cross-motions for summary judgment, both parties responded to the opposing motion, and both parties replied in support of their respective motions (DN 16, 17, 20, 21, 22, 23). On June 21, 2021, the Court issued a Memorandum Opinion and Order and Judgment which denied Plaintiff's motion for summary judgment, granted Defendant's motion for summary judgment, entered judgment in favor of Defendant, and ordered Defendant to pay the Black Lung Trust Fund $1,594.18 (DN 24 PageID 520).

---

5   In the complaint, Plaintiff has detailed how the District Director determined the interest (DN 1 ¶ 33), and Defendant has admitted this paragraph of the complaint (DN 6 ¶ 1). The assessment is as follows:

> Regarding the interest owed the Trust Fund on the [principal amount that Defendant has imbursed], the District Director assessed interest beginning: (i) with respect to monthly interim benefits payments, from the date the Fund made each monthly benefit payment from March 2005 through June 2009, (ii) with respect to diagnostic costs, from the later of the date the Fund incurred each expense or March 2005, and (iii) with respect to medical treatment costs, from the date the Fund incurred each expense.

(DN 1 ¶ 33).

IV. MOTION TO AMEND AND RESPONSE

On July 19, 2021, Defendant filed a motion to alter or amend, pursuant to Fed. R. Civ. P. 59 and 60, the Court's Memorandum Opinion and Judgment (DN 26). In support of its motion, Defendant attempts to relitigate the merits of their summary judgment motion by specifically arguing, "Chevron maintains that interest does not begin to accrue until the issuance of an 'effective' decision and order, which a 'Proposed Decision and Order' is not so long as a hearing is timely requested" (DN 26-1 PageID 528). Moreover, "Chevron urges the Court to reconsider its interpretation of and the meaning of the federal black lung case law pertinent to this matter" (Id. at PageID 529). Defendant then goes through and attempts to reassert its argument as to each stage of the black lung disability determination (Id. at PageID 529-45).

Next, Defendant questions if the Court misread or misunderstood the stipulations presented by the parties as to the amount to be paid and to whom (Id. at PageID 545-46). Defendant claims that its contentions should be adopted and, if the Court was to find that interest begins at the issuance of an "effective" order, then it should be refunded to the amount of $1,849.00 (Id. at PageID 546). However, if no modification was to be made to the Court's determination, then the remedy should be amended to direct a refund to Defendant in the amount of $254.82 (Id.).

Plaintiff, in contrast to Defendant's contentions, argues that the Court should reject Defendant's attempts to relitigate the merits of the case (DN 27 PageID 552). Plaintiff asserts that Defendant has not sufficiently met any of the requirements of Rule 59 to amend the Court's prior Order and Judgment (Id.). "Plaintiffs agree that, under the logic of the Court's decision as applied to the undisputed facts of this case, [Defendant] should not have been ordered to pay the Trust Fund $1,594.18, and is instead entitled to a $254.82 refund" (Id. at PageID 553).

5

## V. DISCUSSION

It has routinely been held that a motion pursuant to Fed. R. Civ. P. 59 "should not be used to re-litigate issues previously considered." Am. Marietta Corp. v. Essroc Cement Corp., 59 Fed. Appx. 668, 671 (6th Cir. 2003); *see also* Proctor v. United States, No. 5:11-CR-030-TBR, 2018 U.S. Dist. LEXIS 33144, at *2 (W.D. Ky. Mar. 1, 2018) ("The Sixth Circuit and its lower courts have consistently held that a Rule 59 motion should not be used either to reargue a case on the merits or to reargue issues already presented or otherwise to merely restyle or rehash the initial issues.") (citations and quotations omitted). "Motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." Gencorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999). Additionally, "[t]he moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." Pueschel v. Nat'l Air Traffic Controllers' Ass'n, 606 F.Supp.2d 82, 85 (D.D.C. 2009). Granting a motion to amend or alter a judgment has been described as "an extraordinary remed[y] reserved for the exceptional case," Foster v. DeLuca, 545 F.3d 582, 584 (7th Cir. 2008), and should only be granted sparingly. United States *ex rel.* Am. Textile Mfrs. Inst. v. Limited, 179 F.R.D. 541, 547 (S.D. Ohio 1998).

Looking to FED. R. CIV. P. 60, "[t]he standard for granting a Rule 60 motion is significantly higher than the standard applicable to a Rule 59 motion." Feathers v. Chevron U.S.A., 141 F.3d 264, 268 (6th Cir. 1998). Under Rule 60, relief may be granted only for certain specified reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Id. (quoting FED. R. CIV. P. 60(b)).

Here, Defendant has not presented newly discovered evidence or an intervening change in controlling law. Looking to "clear error of law," Defendant merely rehashes the same issues, arguments, and citations that were considered and rejected in the Court's Memorandum Opinion and Order. While Defendant may claim that the Court's analysis is predicated upon an erroneous interpretation of the law, this attempt to re-litigate the issue does not show a clear error of law. Finally, there has not been a showing of manifest injustice that would warrant reconsideration or amending the substance of the Court's prior decision. As for the enumerated reasons described in Rule 60(b), Defendant has not made a showing for any of the reasons. Therefore, the Court declines to revisit the merits of this matter and denies this portion of Defendant's motion.

Turning to the remedy discussion, both parties stipulate that Defendant should not be ordered to pay the Black Lung Trust Fund $1,594.18 (DN 26-1 PageID 545-46; DN 27 PageID 552-53). The Court acknowledges its misreading of the stipulations submitted with Defendant's motion for summary judgment, which provided the amounts to be paid or refunded in certain circumstances (DN 17-2 PageID 383). In the stipulations, if the Court's findings were implemented, the parties agreed that Defendant owed the Black Lung Trust Fund $1,594.18 (Id.)—the amount the Court ordered Defendant to pay (DN 25). However, as stipulations continue,

Plaintiff agrees that Defendant previously paid $1,849 to the Trust Fund (Id. at PageID 383-84). This overpayment would result in a $254.82 refund to Defendant (Id.). This is the same amount the parties both agree should be refunded (DN 26-1 PageID 545-46; DN 27 PageID 552-53). As such, the correct amount should have been $254.82, and that amount should be refunded to Defendant.

## VI. CONCLUSION

Based upon the aforementioned reasons, **IT IS HEREBY ORDERED** as follows:

(1) Defendant's motion to amend or alter the judgment (DN 26) is **GRANTED IN PART** and **DENIED IN PART**;

(2) Defendant shall be issued a refund to the amount of **$254.18**.

September 10, 2021

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:     Counsel of Record